[No. 4129. Decided March 10, 1902.]

SWAN SAMSON, *Respondent,* v. MARGARET K. C. BEALE
*et vir, Appellants.*

FALSE REPRESENTATIONS — AUTHORITY OF AGENT TO MAKE — SUF-
FICIENCY OF COMPLAINT.

In an action against defendants for false representations al-
leged to have been made by their agents in the sale of real
estate, the complaint is proof against demurrer based on the
ground that no authority is shown in the agents to make the
representations, where it alleges that the agents represented
themselves as agents as to all things relative to the building and
property and particularly as to all matters and things connected
with the sale of the same; that the agents had full authority to
sell the same and to represent the defendants in all things con-
nected therewith, when these allegations are combined with the
further averment that the representations were made to plain-
tiff by defendants through their agents.

SAME — ACTION FOR DAMAGES — PROPOSED RESCISSION AS A DEFENSE.

Where one claiming to have been led into a contract by means
of false representations elects to affirm the contract and sue for
damages, instead of bringing an action for rescission, defendants
cannot set up the defense that they offered to rescind the sale
and refund to plaintiff the money paid thereunder.

SAME — NON-SUIT.

In an action to recover damages because of false representa-
tions by defendant's agents as to the condition of the founda-
tion under a building sold to plaintiff, plaintiff should be non-
suited when no authority of the agents to bind their principal
by representations was shown, but merely an authority to sell
the property and receive the purchase money; and when it ap-
pears the agents informed plaintiff as to what builder constructed
the foundation and the plaintiff could readily have ascertained
the character of the foundation from him, instead of relying
upon the statements made by the agents.

PRINCIPAL AND AGENT — AUTHORITY TO WARRANT NOT IMPLIED FROM
AUTHORITY TO SELL.

The authority of an agent to collect and remit rents, pay
taxes, and look after ordinary repairs, combined with an author-

ity to sell the premises, would not carry with it authority to bind the principal by any representations the agent might make as to the condition of the property.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. SNELL. Reversed.

*Walter Loveday* and *Remington & Reynolds,* for appellants.

*Allyn & Allyn,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—On and prior to October 1, 1900, the appellants were the owners of certain real estate in the city ·of Tacoma, upon which a building was then standing. Respondent brought this suit against appellants, and alleged, in substance, that appellants are non-residents of said ·city, and that they are, and for a long time have been, represented in said city by Purdon & Stacy and G. F. Stacy, as agents; that on or about the date first mentioned said Purdon & Stacy and said Stacy represented themselves as such agents as to all things relative to the said building and property, and particularly as to all matters and things connected with the sale of the same; that on said date respondent was proposing to buy said property, and, for the purpose of looking it over, was accompanied by said Stacy as the agent and representative of appellants, the owners, and that he had full authority to sell the same, and to represent appellants in all things connected therewith; that appellants, through their said agent Stacy, represented to respondent that there was a solid brick foundation wall, in good condition, all around the main structure, and also under the partition walls inside, which had cost more than $1,000, had been placed there a short time before, was complete and sufficient to last for years; that

appellants, through their said agent, as evidence of the above stated facts, made certain openings in the building, showing brick work as done, and thereby caused respondent to be satisfied as to said representations, the truth of which could not be fully otherwise determined without injury to said building; that thereupon respondent proposed to buy said property, and offered to pay therefor the sum of $6,500 cash, and later, being furthermore fully satisfied by a showing of specifications and plans as to said foundation, that the same was new and in first-class condition, made again his offer of $6,500, and also agreed to pay commissions of the selling agents; that said last mentioned offer was accepted, and the property was transferred to respondent, who thereupon paid for the same the sum of $6,825; that respondent relied upon the statements and representations concerning the foundation wall, and was induced thereby not to make more full and complete examination than he did make or could make without injury to the building, and was further thereby induced to offer and pay the amount aforesaid. It is further alleged that, some time after respondent came into possession and control of the premises, he discovered there was something wrong with the foundation of the building, and he thereupon had the floors torn up, when he ascertained that the statements and representations aforesaid were untrue, in this: That there was a foundation wall on the north side of the building, but not around the entire building; that a large pier had been built under the southeast corner, and another under about the center of the building, certain parts of all of which had been shown him as aforesaid as proof that foundation walls existed around and under the whole of the building. It is alleged that said representations were known by appellants and their said

agent to be false, and that respondent has been damaged in the sum of $1,200; that he was compelled to place a good and sufficient foundation under the building, which of right should have been there under the statements and representations of appellants, and has been compelled to expend therefor a sum in excess of $1,000, and has incurred other incidental expense, in all amounting to $1,200, for which sum he asks judgment.

A demurrer was interposed to the complaint, which was overruled, and appellants excepted to said ruling. Thereupon the defendants answered the complaint. The answer admits that Purdon & Stacy were the agents of appellants, with limited powers, viz., with power to collect rents, and obtain and submit offers to appellants for the purchase of the property mentioned. But all other allegations of the complaint as to agency are denied. It is further admitted that said property was shown to respondent by said Stacy, and it is alleged that respondent was by said Stacy given every opportunity to inspect the same. It is further alleged that respondent well knew that Purdon & Stacy were the agents of appellants for the purpose of collecting rents and remitting collections to appellants, and that, as to a sale of the property, the only power or authority conferred upon said agents was to obtain and forward to appellants offers to purchase the same, and to collect and forward the purchase price. It is further alleged that respondent, through said agents, submitted an offer to appellants to purchase said property, agreeing to pay therefor the sum of $6,500 in cash if said offer should be accepted by appellants, and at the same time, as an evidence of good faith, respondent deposited with said agents the sum of $50, taking a receipt therefor, which stated that the offer was conditioned upon the title being found clear;

that said offer was accepted by appellants subject to the payment by respondent of all agents' commissions, which respondent thereupon agreed to pay, and did pay at once; that subsequently the title was found good, a deed from appellants to respondent was delivered, the balance of the purchase price was paid by respondent, and no further or different negotiations were had between the parties; that no representations were made to respondent by appellants, or by any one authorized to represent them; that, prior to the offer to purchase and the payment of the purchase price, respondent made a full and complete inspection and examination of said property; that said premises and building and its foundation were offered to respondent for his inspection and its exact condition was easily ascertainable and discoverable, and was in fact ascertained and discovered by him before he offered to purchase, or before he purchased, the property. It is further alleged that after respondent expressed dissatisfaction with his bargain, on account of alleged defects in the said foundation, the appellants offered to rescind said sale, and to return to respondent all the money theretofore paid by him on said purchase, and leave him in the same situation he was in before he bought said property, but which offer respondent declined. Respondent moved to strike from the answer all the allegations concerning the offer of appellants to rescind the sale, which motion was sustained, and exception to such ruling was duly taken by appellants. The cause was tried before a jury, resulting in a verdict for respondent in the sum of $700. The motion for a new trial interposed by appellants was denied, and judgment thereafter entered against appellants for $700 and costs. From said judgment this appeal was taken.

It is assigned as error that the court overruled the demurrer to the complaint, for the reason that the complaint,

upon its face, shows only authority in the agents to sell, and that no authority to make the representations as alleged is shown. The complaint, however, alleges that the agents represented themselves as agents "as to all things relative to the building . . . and said property and particularly as to all matters and things connected with the sale of the same as hereinafter set out." Again, it is alleged that the agents "had full authority to sell the same and to represent said defendants in all things connected therewith." These allegations are followed by others concerning the representations, which representations may be said to be referred to by the words "hereinafter set out," and "in all things connected therewith," in the quotations above. Combining these with the further averment that the representations were made by appellants to respondent through their said agents, we think the averments of the complaint sufficiently strong to withstand a demurrer.

It is also assigned as error that the court granted the motion to strike the allegations from the answer concerning an offer to rescind the sale and refund to respondent the money he had paid. We think this was not error.

"The plaintiffs were not required, after the deed had been executed, to accept the offer of the defendant to refund the money received and declare the contract off. They had the option to allow the sale to stand, and by an action at law to recover for the injury sustained. The latter course is pursued, and the party liable for the fraudulent representations cannot object." *Lynch v. Mercantile Trust Co.*, 18 Fed. 486, 489.

The rule of the above case was approved and followed by this court in *Sears v. Stinson*, 3 Wash. 615 (29 Pac. 205). Ordinarily it is the injured party who seeks a rescission. He may pursue either the equitable remedy of

rescission, and offer to place the other party *in statu quo* by tendering back the benefits of the contract, or he may retain the benefits of the contract and bring his action at law for his damages. In *Pronger v. Old National Bank,* 20 Wash. 618, 626 (56 Pac. 391), this court said:

"The action for damages is a law action for a money judgment, requires no tender, and may be brought by the injured party at any time within the statute of limitations. Nor does an affirmance of the contract after discovery of the fraud extinguish the right to an action for damages on account of the fraud. An affirmance bars only the right to rescind. All other remedies remain unimpaired."

Thus the right of the injured party to affirm the contract and sue for damages is recognized. If such were not the case, the wronging party might have it in his power to select the remedy, since, if a rescission were allowed him, he could, upon hearing of an intended action by the wronged party, at once rescind, returning only what he had obtained, and thus defeat the rights of the one entitled to redress.

It is next assigned as error that the court overruled the motion for non-suit. This assignment presents a serious question. The evidence of respondent had shown that the agents to whom the offer to purchase was submitted afterwards produced a deed from appellants transferring the property to respondent, and received from respondent the purchase price. This was undoubtedly sufficient to establish authority in the agents to find a purchaser and to receive the purchase money. It was shown by respondent that he knew at the time he offered to buy the property that the offer would have to be submitted to the appellants for their approval or rejection before any further steps could be taken. It was thus manifest to him then that the agents had not full power even to conclude the terms of

a sale without submission to appellants. Respondent admitted in his own testimony that at the time he was looking over the building with Mr. Stacy, before the offer to buy was made, the latter told him that a Mr. Bonnell, who then lived in Tacoma, had superintended the work when the foundation was put in. He then knew that he would procure exact information from the one who probably knew more of the details concerning the construction of the walls than any other person. He also admitted that he afterwards saw Mr. Bonnell, who informed him of the exact condition of the walls. But he testified that this was some time after the purchase was completed, and that he did not see him before he had completed the purchase. Under these circumstances, did respondent have a right to rely upon statements made by the agent, and to believe that they were authorized by the principals, and was he relieved from making any further inquiry concerning the foundation? The principals were thousands of miles distant, being in the far East; and although he may have understood that the agents collected rents, paid taxes, and looked after ordinary repairs to the property, yet it must have been apparent to him that they were not clothed with more power concerning a sale than simply to submit offers to purchase. He was under no obligation to purchase the property, and his action was purely voluntary. Two courses were open to him: He could easily have learned the truth from the one who probably knew most about it,—a disinterested person,—or he could have required that the statements made to him should be confirmed by the principals, as an element of contract, in his deed or otherwise. He chose, however, to rely upon the statement made by the agent under the circumstances above outlined. The testimony for the defense differs

from respondent's testimony as to just what was said and
done in the way of representations. But we are now con-
sidering the motion for non-suit, and confine ourselves to
the most favorable view for respondent. Pending the time
the offer to purchase was submitted, and a reply thereto
came from appellants, respondent was shown certain
plans and specifications which purported to cover the
foundation work, and which had been prepared by Mr.
Bonnell, who did the work. These plans appeared to pro-
vide for a complete wall, and yet respondent testifies that
he did not consult Mr. Bonnell as to just what was in fact
done. It appeared in the evidence for the defense that
those plans had been prepared three years before, when
one of the appellants was in Tacoma personally looking
after the work, but it was afterwards decided not to do
all the work provided by the plans. The plans were, how-
ever, left at Tacoma, and were found in the desk of one
of the agents. It is urged by respondent that the fact
that these plans were in the possession of the agents, mak-
ing it possible for them to be used for a fraudulent pur-
pose, as it is claimed they were used, should be taken as
evidence that the agents were authorized to make the
false representations which it is claimed were made. In
the consideration of the motion for non-suit, this argument
at first seems plausible, and it may at first appear that the
facts should be submitted to the jury, and leave it for
them to say whether the plans were left there for the pur-
pose claimed. But we are confronted with the fact that
respondent must have known that the plans were not of
themselves proof of what had actually been done, and fur-
thermore that by the very plans themselves, having been
told who made them, he was again forcibly informed that
he could easily go to Mr. Bonnell and get the true infor-

mation before he completed the purchase. In *Washington Central Improvement Co. v. Newlands,* 11 Wash. 212, 214 (39 Pac. 366), this court said:

"So far as the allegations of the answer are concerned, there is nothing to show that the land was not at hand when this contract was made, and that it could not, by the use of ordinary prudence, have been investigated by the purchaser; and in cases of this kind, it seems to us that parties must exercise ordinary business sense, and the faculties which are given to them for the purpose of transacting business; and that they cannot call upon the law to stand *in loco parentis* to them in ordinary transactions of business and their ordinary dealings with their fellow men. . . . If people having eyes refuse to open them and look, and having understanding refuse to exercise it, they must not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. Written contracts would become too unstable if courts were to annul them on representations of this kind."

Again, at page 215, the court, approving *Slaughter's Adm'r v. Gerson,* 13 Wall. 379, further said:

"It was there held that it was not sufficient that it was a misrepresentation upon which he relied to his injury, but that he must have some excuse other than negligence for relying upon it; that where the means of information are at hand and equally open to both parties and no concealment is made or attempted, the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties; that the neglect of the purchaser to avail himself in all such cases of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief."

The same rule has been followed by this court in other cases. See *West Seattle Land & Imp. Co. v. Herren,* 16 Wash. 665 (48 Pac. 341); *Griffith v. Strand,* 19 Wash.

686 (54 Pac. 613); *Walsh v. Bushell,* 26 Wash. 576 (67 Pac. 216).

It is insisted by respondent that the authority to collect and remit rents, pay taxes, and look after ordinary repairs, in addition to authority to sell, carried with it authority to bind the principals by any representations made by the agents. We think not. Certainly the ordinary authority to collect rents and pay taxes does not carry with it authority to sell. Authority to sell must exist by reason of special authorization, and the evidence here discloses no further authority concerning a sale than to receive and submit offers to purchase. The authority was certainly limited, as the agent was not empowered to close the terms of a sale without the approval of the principal. Respondent's argument is based upon the principle that authority to an agent to do a thing is presumed to include all the necessary and usual means of executing it with effect, and that, when clothed with such authority, false representations made by him must bind the principal. In *Carstens v. McReavy,* 1 Wash. 359 (25 Pac. 471), it was held that verbal authority to a real estate agent to sell land did not carry with it power to enter into a contract of conveyance binding upon the principal. At pages 362 and 363 the court said:

"Therefore, to our minds, it seems clear that ordinarily it is not within the contemplation of the owner and agent, where property of this character is placed in the hands of the latter for sale, that he shall, without consultation with his client, execute a contract. We are aware that courts have held to this extent, basing their decisions upon a distinction between an authority to sell and an authority to find a purchaser, and upon the well known rule that an authority to an agent to do a thing is presumed to include all the necessary and usual means of executing it with effect. But such holdings do not commend themselves to

our judgment, and, as this is a new question in this state, and we are satisfied that it is not the general practice of agents to make such contracts, we do not hesitate to dissent from the decisions above mentioned, especially as there is no lack of authority for the position we take. We cannot shut our eyes to the obvious defect in the argument that authority to sell, in this instance, necessarily implies authority to execute a contract. A sale of land, 'executed with effect,' includes the execution of a deed and the delivery of possession, neither of which the agent can do, unless his authority to sell is supplemented by the delivery of possession to him and a power of attorney to convey. So that he does not, although in possession of the authority to *sell,* have all the necessary means of executing that authority with final effect. He stops short somewhere, and when we are inquiring where the probable and proper place of his stoppage is, the evils that would attend the extension of his actual authority beyond the finding of a purchaser, furnish ample reason for fixing his limit there."

It was plainly held in that case that a mere authority to sell is limited to the finding of a purchaser, and that, when such purchaser is found, the duty of the agent is performed, and his authority exhausted. The above case was followed and approved in *Armstrong v. Oakley,* 23 Wash. 122 (62 Pac. 499). At page 124 the court said:

"Ever since the case of *Carstens v. McReavy,* 1 Wash. 359 (25 Pac. 471), it has been the settled law of this state that authority granted to an agent to sell real estate does not give authority to enter into a contract for a conveyance. When the agent procures a purchaser, ready, willing, and able to buy on the terms proposed, his employment is at an end."

The effect of the above decisions establishes the rule in this state that such authority as was shown in the case at bar goes no further than to authorize the finding of a pur-

chaser. Representations made by an agent under such circumstances are not binding upon the principal.

"An agent with restricted power to sell a tract of land at a given price, has no power to bind his principal by any representation as to the quantity or quality of the land. That is beyond his power; or else by representing that a tract of five acres, which he was authorized to sell for $1,000, contained ten, he could bind his principal to convey it for $500 on the principle of compensation. False representations made by an agent at the bargain, although unauthorized by his principal, may release the purchaser from his contract, on the ground of fraud or deception, which is upon another principle of equity; but they cannot bind the principal, if beyond the scope of the authority given." *National Iron Armor Co. v. Bruner,* 19 N. J. Eq. 331, 335.

If, however, we should consider the case as submitted to the jury, we think the court erred in its view of the law as given to the jury by its instructions. The following instructions were given:

"If you believe from the evidence that Purdon & Stacy, or George F. Stacy, were the agents of defendants, to negotiate the sale of this property without instructions except as to price, then you are instructed that the law gives them the authority to make any necessary representations incidental to such. And that whatever representations they thus made in effecting the sale of said property was the representation of the defendants, their principals, and the defendants are bound thereby. An agent clothed with authority to sell property without other limitations than the price has authority to do all things usual or necessary to carry into effect the power delegated to the agent, and any representations made by the agent to the purchaser as to foundation walls of said building would bind the principal as though the principal had made the representations himself."

It is manifest that the above instructions are not in harmony with the rule heretofore discussed, and we think they were erroneous. Since the court entertained the view of the law as set forth in the said instructions, it was consistent that the motion for non-suit was denied, but we think it was error.

The judgment is therefore reversed, and the cause remanded, with instructions to the court below to grant the motion for non-suit, with costs taxed against respondent.

REAVIS, C. J., and DUNBAR, WHITE, MOUNT, ANDERS and FULLERTON, JJ., concur.