[No. 11414. Department One. January 17, 1914.]

EDWARD H. O'DANIEL *et al.*, *Respondents*, v. W. M. STREEBY, *Appellant*, WILLIAM L. TIPTON *et al.*, *Defendants*.[1]

BROKERS—AUTHORITY—FRAUD—LIABILITY OF PRINCIPAL. A broker employed to conduct negotiations for the sale of real property upon a commission has apparent authority to represent what was appurtenant to the realty, and the principal is liable in damages for his fraudulent representations relating thereto.

VENDOR AND PURCHASER—REMEDIES OF VENDEE—FRAUD—MISREPRESENTATIONS—RELIANCE. The purchaser of real property has the right to rely on representations, made in answer to a direct inquiry, as to what trade fixtures were appurtenant to and passed with the land, where there was nothing in their appearance that negatived the idea that they were part of the realty.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered January 30, 1913, upon findings in favor of the plaintiff, in an action for fraud, tried to the court. Affirmed.

*Scott & Campbell*, for appellant.

*G. G. Ripley*, for respondents.

ELLIS, J.—This is an action for damages because of an alleged misrepresentation made by an agent on a sale of real estate. The court, in substance, found that the defendant Streeby was the owner of the real estate in question on September 1, 1910; that the defendant Tipton, as agent for Streeby, and for a commission, negotiated a sale of the premises in question to the plaintiffs, who purchased the premises, paid the purchase price, and received a deed thereof from the defendant Streeby; that Tipton, during the negotiations by which the sale was accomplished, represented to the plaintiffs that the following articles, namely, a meat market refrigerator, shelving in a storeroom, kitchen sink, storm sash, seven screen doors, warehouse, pieces of 2x6 scantling

[1]Reported in 137 Pac. 1025.

in attic, lumber from tent in rear of barn, and sundry other boards, all of which were then on the premises, belonged to, and were a permanent part of the realty; that these representations were false in that these articles were placed on the premises by one Floan (a tenant) who, by agreement with Streeby, owned them and had the right to remove them, and subsequent to the conveyance, did remove them; that these articles were of a reasonable value of $504; that these representations were a material inducement to the plaintiffs in making the purchase, and that the plaintiffs had no knowledge or notice of their falsity till long afterwards. We have examined the evidence, which is conflicting, with much care, but its discussion in detail would merely lengthen this opinion to no useful purpose. We are convinced that, by a clear preponderance, it supports the court's findings. Tipton's agency to find a purchaser and negotiate a sale of the real estate was clearly established, and it was also established by the evidence and, in fact, conceded in argument, that the warehouse, refrigerator and shelves were the chief things in issue, and were of such character and were so attached to the realty as to be a part of it, but for the agreement with the tenant that he might remove them. It is conceded that the other articles were of little value. Upon these findings and suitable conclusions of law, the court entered judgment for the plaintiffs and against the defendants for $504, with legal interest from September 1, 1910, and for costs. At appropriate times, the defendants moved for a nonsuit and for a new trial. Both of these motions were overruled. The defendant Streeby appeals.

The appellant presents his several assignments of error under two heads, contending (1) that the authority of the agent was limited to the mere finding of a purchaser, and that he could not bind the principal by his representations; (2) that, conceding a general authority to make the representations claimed, they were not such that respondents had the right to rely upon them.

I.   The appellant claims that his agent, Tipton, had no authority to make any representations concerning what was appurtenant to and passed with the realty which would bind the appellant as principal.   It is, of course, a general rule that third parties dealing with an agent cannot rely upon the agent's assumption of authority, but must, at their own risk, ascertain both the fact of agency and the extent of the agent's authority.   The burden is upon them to show that the acts of the agent were within the scope of his authority.   But it is also a general rule that when the fact of agency is once established, the principal is bound by the acts of his agent within the apparent scope of his actual authority, or that authority which the principal knowingly permits the agent to assume.   1 Am. & Eng. Ency. Law (2d ed.), p. 989.   What comes within the apparent scope of an agent's authority, whether the agency be general or special, is determined by what is usual or necessary to the performance of the principal power; that is, what is necessary to effect the purpose of the agency.   Such necessary powers are *prima facie* incident to every authority.

"The principle is elementary and uniform that a power given an agent in a transaction carries with it the authority to do whatever is usual and necessary to carry into effect the principal power.   And this applies as well to special as general agents, unless the manner of doing the particular act is prescribed by the power."   1 Am. & Eng. Ency. Law (2d ed.), pp. 997, 998.

See, also, *Driver v. Galland*, 59 Wash. 201, 109 Pac. 593. It would seem to follow as a corollary that, where the acts done come within the apparent scope of the authority so defined, it is incumbent upon the principal seeking to avoid liability for such acts to show not only that the authority to do the acts was not expressly given to the agent, but that the authority was expressly withheld and that the person dealing with the agent had knowledge of that fact.

The application of these general principles to the facts be-

fore us makes it plain that the agent had authority to represent what was appurtenant to the realty, so as to bind the appellant. It was clearly established that the agent was authorized to conduct the negotiations for the sale, merely submitting the terms of the sale to the principal for approval. The appellant himself so testified. He admitted that he never, at any time during the negotiations, communicated with the respondents or their agents. Such an authority clearly empowered the agent to point out and exhibit to the purchaser the property to be sold. That was a necessary part of the most preliminary negotiation. There could hardly be a beginning of negotiations without an indication to intending purchasers of the subject-matter of negotiation. If, therefore, the fixtures pointed out and exhibited by the agent as part of the realty were of such a nature and so attached that, in the absence of an agreement with the tenant to the contrary, they would have constituted a part of the realty, then, as between the principal and purchaser, the principal was bound by his agent's representations. There was no pretense on the appellant's part that he ever actually informed the agent that these articles were not his own. He does not claim to have limited the agent's authority by any express instructions in that particular. The representations were made by the agent in the line of his employment. They were within the apparent scope of the agent's authority even as admitted.

"We judge from the remarks interjected by the court during the trial that it entertained the view that the owner of the land was not responsible to the purchaser for the fraudulent representation of its selling agent. This, we think, was a wrong theory of the law. The owner is the beneficiary of the sale. The salesmen are his agents, and under the ordinary rule of agency the owner is responsible for the representations of his agent made in the line of his employment. It is true that the agency in this case is one degree removed, Erickson, who sold the lots to appellant having been employed by Arnold & Nachant, the firm who had a contract with the owner to sell the addition, Arnold & Nachant agreeing to di-

vide with Erickson their commission on lots sold by him. But this was a mere detail as to the manner of sale by Arnold and Nachant. The owner was still equally the beneficiary of the transaction, and it would tend to encourage fraudulent misrepresentation if such owner were allowed to escape responsibility through the subterfuge of having the sale made by a subagent. It must not be allowed to disclaim responsibility and at the same time receive the benefit of the fraudulent transaction." *Nelson v. Title Trust Co.*, 52 Wash. 258, 100 Pac. 730

See, also, *Smith v. Gray*, 52 Wash. 255, 100 Pac. 339. The case of *Samson v. Beale*, 27 Wash. 557, 68 Pac. 180, mainly relied upon by the appellant is clearly distinguishable from the case here. In that case, the agent's representations were as to the physical condition of the house, namely, that there was a brick foundation under the whole of it. The house was at hand and was examined by the purchaser, who at the time, was told where he could find a certain reputable contractor who had superintended the work of construction, but he made no personal examination or inquiry. The representation of the agent was not, as here, confined to an indication of the very subject-matter of the negotiation for the purpose of inspection, but went to its physical condition. The one was within the apparent scope of the agent's authority. The other was not. It may be conceded, as held in *National Iron Armor Co. v. Bruner*, 19 N. J. Eq. 331, that "an agent with restricted power to sell a tract of land at a given price has no power to bind his principal by any representation as to the quantity or quality of the land," but even so, he surely has power to point out the thing to be sold if he has power to conduct the negotiations for its sale; that is to say, that act is within the apparent scope of his authority so as to bind his principal. That the representations attributed to the agent here were within the apparent scope of his authority is manifest from their very nature. The storeroom itself, just as the articles here in question, might or might not have been a part of the realty as between the ap-

pellant and his tenant, according as they had contracted. Had it been put there by the tenant under an agreement that he might remove it, it would have belonged to the tenant. *Morin v. Bremer*, 61 Wash. 62, 111 Pac. 1058. In such a case, had the agent, in exhibiting the property and offering it for sale, failed to advise the purchaser of that fact, and the principal, in making the deed, failed to except the building from the conveyance, no one would have had the hardihood to say that the suppression of that fact would not be actionable fraud. The principle here involved is exactly the same. True, the articles were such that they might be trade fixtures, but the purchaser made the direct inquiry of the agent authorized to negotiate the sale, and the agent, as the court found on what we deem sufficient evidence, represented that they were appurtenant to, and a part of, the realty. They were not excepted from the conveyance executed by the appellant pursuant to the agent's negotiations. On sound principles, these representations should be held binding on the principal, if they would bind him had he made them himself.

II. The appellant's second contention is that the plaintiffs had no right to rely upon the agent's representations for the reason that the subject-matter of the representations was at hand and that all of the facts concerning the articles in question and their ownership could have been readily ascertained by the exercise of ordinary care on the respondent's part. The argument in support of this contention proceeds upon the theory that, had the representations been made by the appellant himself, they would not have constituted actionable fraud. This position is obviously untenable. There was nothing in the appearance of the articles in question which negatived the idea that they were a part of the realty. The representations were concerning a matter of fact peculiarly within the knowledge of the appellant and not within the knowledge of the respondents. When the respondents made the direct inquiry of the agent whether these articles went

with the realty, they had the right to assume that they would receive a truthful answer. It was not incumbent upon them, on receiving an answer in the affirmative, to make any further inquiry. As said in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102.

"Strong language has been used by this and other courts in defining the duties of a purchaser from which it might be inferred that vendors have an unbridled license to lie and deceive, but such has never been the law, and the tendency of the more recent cases has been to restrict rather than extend the doctrine of *caveat emptor*."

See, also, *McMillen v. Hillman*, 66 Wash. 27, 118 Pac. 903; *Kuehl v. Scott*, 66 Wash. 318, 119 Pac. 742; *Breese v. Hunt*, 67 Wash. 398, 121 Pac. 853; *Simons v. Cissna*, 60 Wash. 141, 110 Pac. 1011; *Grant v. Huschke*, 74 Wash. 257, 133 Pac. 447; and *Wilson v. Clark*, 63 Wash. 136, 114 Pac. 916.

The decisions chiefly relied upon by the appellant are clearly distinguishable from the case here. In *Washington Cent. Imp. Co. v. Newlands*, 11 Wash. 212, 39 Pac. 366, it was represented as an inducement to the purchaser that a certain building was already in process of construction. The ascertainment of the fact was easy by a mere inspection of the property and its environment. Moreover, the broad doctrine laid down in that case has been much restricted by all of the more recent decisions in this state and by the trend of modern authority everywhere. In *Shores v. Hutchinson*, 69 Wash. 329, 125 Pac. 142, the purchaser entered upon and prosecuted an independent investigation of the condition of a corporation, stock in which he was purchasing and, as the opinion shows, was fully cognizant of all of the facts. It fully appears that he did not, in fact, make the purchase in reliance upon any representations made by the seller or his agent. The appellant here argues that no representation that personal property was, in fact, realty could make it realty. This argument, however, overlooks the fundamental

consideration that whether or not the articles here in question were personal property was a question of fact which could not be discerned by mere inspection. It is admitted that all of the articles of any material value were of such nature and so attached as ordinarily to constitute a part of the realty. Had the representations been made by the appellant himself, there could be no question that they would have constituted actionable fraud. Having been made by his agent, and being such as fairly to come within the scope of his apparent authority and within the line of his employment, they bind the principal to the same extent as if made by the principal himself.

The judgment is affirmed.

CROW, C. J., GOSE, CHADWICK, and MAIN, JJ., concur.