[No. 18714. Department One. April 2, 1925.]

IVER JOHNSON, *Appellant*, v. WILBUR R. WILLIAMS *et al.,*
*Respondents.*[1]

BROKERS (4)—AUTHORITY—POWER TO SELL. A broker, orally au-
thorized to find a purchaser and giving a receipt for earnest money
subject to the approval of the owner, has no power to make a bind-
ing contract for sale.

BROKERS (37)—PRINCIPAL AND AGENT (56)—MISREPRESENTATION OF
AGENT—LIABILITY OF PRINCIPAL. The vendor is not bound by, or
liable for the false representations of a real estate broker, author-
ized to find a purchaser and without power to make a contract of
sale, made in showing the property, to the effect that an orchard
on the place was a good commercial orchard that would bring good
returns without any failure of crop and that it was a good buy at
the price asked.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered March 13, 1924,
upon granting a nonsuit, dismissing an action for
fraud. Affirmed.

*Holden, Shumate & Cheney,* for appellant.

*Geo. F. McAulay,* for respondents.

PARKER, J.—The plaintiff, Johnson, commenced this
action in the superior court for Yakima county, seeking
recovery of a money judgment against the defendants,
Williams and wife, for false representations, alleged
to have been made by their agent, inducing him to en-
ter into a contract for the purchase by him from them
of a five-acre tract of land, with improvements thereon,
in that county. Recovery is sought measured by the
amounts paid by Johnson upon the purchase price,
taxes on the land, water assessments, spraying trees,
and insurance on the house, aggregating $3,924.15. The
case proceeded to trial as an action at law before the

[1]Reported in 234 Pac. 449.

court sitting with a jury. At the conclusion of the introduction of the evidence in behalf of Johnson, on motion made in behalf of Williams and wife, the trial court withdrew the case from the jury, decided, as a matter of law, that the evidence was not sufficient to support any recovery by Johnson, and rendered judgment of dismissal accordingly. From this disposition of the cause, Johnson has appealed to this court.

On February 4, 1920, Williams and wife, being then the owners of the land as their community property, Mr. Williams orally listed the land for sale with Coonse, Taylor and Bond, real estate agents in Yakima, authorizing them to find a purchaser. Mr. Williams then orally gave them information as to the location and description of the land and the improvements thereon, consisting of a dwelling, sheds, fruit trees, etc., and authorized them to find a purchaser at a price of $7,500. Memorandum was accordingly made by them upon their records, but no writing was then signed by either Mr. Williams or his wife. Soon thereafter J. R. Vincent, who, we shall assume, was a salesman and in the employ of Coonse, Taylor and Bond, acting for them, found Johnson, a prospective purchaser, and showed him the property, Johnson, after examining the property, evidently with considerable care, on two different occasions, expressed a willingness to purchase it at the price asked. Thereupon Johnson paid to Coonse, Taylor and Bond $500 as earnest money, they giving him a receipt therefor stating therein tentatively the purpose of the payment and the terms of the proposed purchase. This receipt and tentative agreement concluded with these words: "This agreement is made subject to the approval of the owner." Thereafter Mr. and Mrs. Williams endorsed their approval on this receipt and agreement, they not being present when it was signed by Vincent,

representing Coonse, Taylor and Bond, and delivered to Johnson.

Thereafter on February 17, 1920, there was duly executed by Mr. and Mrs. Williams and Johnson a formal contract for the sale of the property by them to Johnson, by the terms of which he then paid $2,000 in addition to the $500 already paid, making the down payment $2,500, and agreed to pay the balance of the $7,500 purchase price in deferred payments with interest at stipulated times, he to receive deed of conveyance upon so paying the balance of the purchase price. That sale contract contains a forfeiture clause commonly found in such contracts by which, upon default of Johnson in making payments as agreed, Williams and wife might declare a forfeiture of all his rights under the contract, including the portion of the purchase price paid by him without recourse to them for recovery of the same. Thereupon Mr. and Mrs. Williams moved off the place, surrendering possession thereof to Johnson.

Some three years thereafter, on March 1, 1923, Johnson having remained and being then in possession under the contract, and being then clearly in default in making payments as provided for by the terms of the contract, Mr. and Mrs. Williams gave him notice that if payments be not made by him in accordance with the terms of the contract on or before April 2, 1923, they would elect to annul the contract and forfeit all his rights thereunder, including payments theretofore made by him upon the purchase price. Soon thereafter Johnson moved off the place, and soon thereafter commenced this action seeking recovery, as above noticed.

The theory upon which recovery is sought by Johnson of the portion of the purchase price paid by him with interest, the sums paid by him for taxes, water

assessments, spraying of trees and insurance on the house while he was in possession of the place under the contract, is in substance that he is entitled to such recovery because of false representations made to him by Vincent as salesman for Coonse, Taylor and Bond, and therefore as agent for Mr. and Mrs. Williams, as to the quality and earning power of the place as a fruit farm. As to what these alleged misrepresentations were, let us take Johnson's own story therefor. He testified as follows:

"Mr. J. R. Vincent took me out and showed me the place. He was at the office of Coonse, Taylor and Bond, and Mr. Coonse turned me over to him. . . He told me it was a good commercial orchard. . . The varieties of trees were good commercial varieties and it would bring me good returns and he said that the place would pay for itself in three or four years, about four years, he said. . . I asked him about the frost and other destructive elements and climatic conditions in general favorable to fruit raising out there, and he said it was safe from frost and other destructive elements and gave me assurance that there was no such a thing as crop failure. . . . Q. Now did you tell Mr. Vincent that you were a stranger in that community? A. Yes. Q. What did you say to Mr. Vincent about that? A. Well I told him I come out here from Minnesota and didn't know anything about the valley or this part of the country. Q. Did you say anything else to him as to what you wanted? A. Yes, I told him I wanted a small commercial orchard tract with a house on it. Q. Now was anything said about the price or value of this land, and if so what was it? A. Yes. He said it was a good buy at that price, seventy-five hundred. Q. Now you may state whether or not these statements were all made to you before you entered into this contract? A. Yes, sir. Q. Did you believe them? A. I did. Q. Would you have bought this property for the price it was sold to you except for these statements? A. No. I would not have bought it at half the price if I had known the facts."

These are the only representations upon which recovery is sought. For argument's sake, we shall assume that the jury would have been warranted in believing that they were untrue, that they were relied upon by Johnson and were the inducing cause of him entering into the formal contract of purchase with Mr. and Mrs. Williams. It is not claimed that Mr. or Mrs. Williams heard Vincent make any of these alleged misrepresentations touching the quality or earning power of the place; nor is it claimed that either of them ever personally made any such misrepresentations to Johnson; nor is it claimed that either of them ever knew of any such alleged misrepresentations being made by Williams to Johnson, until about the time of the commencement of this action, some three years after the entering into of the contract with Johnson for the sale of the place to him. There is no evidence in the record that Vincent made the claimed false representations to Johnson, other than the testimony of Johnson, the substance of the whole of which is above quoted.

It hardly needs argument or citation of authority to demonstrate that neither Coonse, Taylor and Bond, nor Vincent, their salesman, had any agency authority whatever to enter into a binding contract of sale of the land in behalf of Mr. and Mrs. Williams with Johnson. No writing was signed by either Mr. or Mrs. Williams suggesting any such authority, and the concluding words of the original earnest money receipt and tentative agreement above quoted, signed by Coonse, Taylor and Bond by Vincent, delivered to and accepted by Mr. Johnson, plainly told him that no contract looking to the sale of the property by Mr. and Mrs. Williams to him would be of any binding force until approved by Mr. and Mrs. Williams. Thus it is rendered plain that the agency authority of Coonse,

Taylor and Bond, and Vincent, their salesman, was nothing more than their authority to find a purchaser acceptable to Mr. and Mrs. Williams. Our decision in *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180, is conclusive on this question, if indeed any authority is needed therefor in the light of these facts.

Our problem, in its last analysis, is simply this: Are Mr. and Mrs. Williams bound by the alleged false representations, assuming them to be false, as the inducing cause of the purchase by Johnson, which, as we have seen, in substance only relate to the quality and earning power of the property as a fruit farm? It seems to us that the view of the law announced by this court in *Samson v. Beale, supra,* is conclusive in support of the trial court's disposition of the case. The authority there, as here, was simply to find a purchaser, without any contract agency authority whatever in the agent. In showing the property there drawn in question, the agent, as it was claimed, represented that the building had under it a solid brick foundation wall in good condition. This, as it was claimed, was untrue. The truth or falsity of the representation, however, was not apparent, at least not as to a large portion of the foundation. It was in that case squarely held that the agent's authority to find a purchaser for the owner did not go to the extent of binding the owner and making him responsible for this alleged false representation, because it had to do merely with a latent quality of the property; though the court has recognized in later decisions that an agent with power to find a purchaser could, by his untrue representations as to the location and description of the property, that is, as to identification of the property, bind his principal; this seemingly upon the theory that an agency authority to find a purchaser necessarily means authority on the part of the agent to point

out and identify the property to the prospective pur-
chaser, recognizing, however, that this is quite a dif-
ferent thing from an agent's untrue representation as
to the quality of the property, as to its earning power
or as to what is capable of being done with it. That
decision seems to us well grounded in the light of the
authorities therein cited and reviewed.

Among the later decisions from other jurisdictions
lending strong support to this conclusion and showing
that holding to be in harmony with the decided weight
of authority, we note: *Ellison v. Stockton,* 185 Iowa
979, 170 N. W. 435; wherein our decision in *Samson
v. Beale* is cited with approval; also *Hart v. Adair,* 244
Fed. 897, decided by the United States circuit court
of appeals, wherein our decision in *Samson v. Beale*
is cited with approval; and also *Hodson v. Wells &
Dickey Co.,* 31 N. D. 395, 154 N. W. 193, L. R. A.
1917F 958; there being appended to that decision, as
reported in the latter volume, a somewhat exhaustive
note upon the subject.

It is argued in behalf of Johnson that our decision
in *Samson v. Beale* has, in a large measure, been modi-
fied by our later decisions. We do not think so. In
*Smith v. Gray,* 52 Wash. 255, 100 Pac. 339, the alleged
false representation consisted of the agent showing
the purchaser the wrong property. That case, how-
ever, was disposed of upon another question. In *Nelson
v. Title Trust Co.,* 52 Wash. 258, 100 Pac. 730, there
was drawn in question an alleged misrepresentation of
an agent in pointing out to the prospective purchaser
property different from that which the contract called
for. In *O'Daniel v. Streeby,* 77 Wash. 414, 137 Pac.
1025, L. R. A. 1915F 634, there was drawn in question
an alleged false representation of the agent as to cer-
tain trade fixtures in the building, such as a refrigera-
tor, shelving, sink, storm sash, etc., representing that

they were to go with the building and the property as real property. This manifestly was falsely pointing out and identifying property to be sold. In *Yarnall v. Knickerbocker Co.*, 120 Wash. 205, 206 Pac. 936, there was drawn in question a false representation by an agent of the lines of the lot, resulting in the purchaser acquiring a different sized lot from that which he supposed he was buying. The circumstances of that case plainly show that the purchaser was misled by such false representations as to the identity of the property he supposed he was contracting to buy. In *Stanton v. St. Michell*, 130 Wash. 449, 227 Pac. 737, it was assumed, rather than decided, that the false representation of the agent amounted in law to the false representation of the vendor. In that particular case the power of the agent was not questioned; and besides, had it been questioned, it seems highly probable from what appears in the record that the power of the agent was such that the representation of the agent was in law the representation of the vendor.

We have considered this case as a law case, not an equity case. Counsel for Johnson manifestly so considered the case, it having proceeded to trial before a jury, and now contends in effect that he is entitled to a verdict of the jury, not the decision of the trial judge, upon the questions of fact as to whether the alleged false representations were made, whether or not they were false, and whether or not they were the inducing cause of Johnson purchasing the property; and that he is entitled to a new trial because the trial court took these questions from the jury. Were we to approach the case as one on the equity side of the court, where the trial judge would be the trier of the facts as well as the law, we would then be approaching it from an entirely different point of view, for then it would be a question of whether or not, under all the

circumstances, the trial court should decide the case upon the merits one way or the other. There would, of course, then come into the case for the court's decision the questions of fact as to whether or not Vincent made the representations, whether or not they were false, whether or not they were the inducement for Johnson making the purchase; and also as to whether or not Johnson timely commenced this action, viewed in the light of the equitable doctrine of laches.

We have referred to Johnson as though he were the only one interested in the purchase contract from the beginning. This we have done merely for convenience of expression. Johnson's wife joined with him in the execution of the contract of February 17, 1920. She has since died, and through appropriate proceedings in court he has succeeded to all of her interest.

The judgment is affirmed.

MAIN and ASKREN, JJ., concur.

BRIDGES, J. (concurring)—I concur only because the case of *Samson v. Beale, supra,* seems to be controlling.

TOLMAN, C. J., concurs with BRIDGES, J.

ON REHEARING.

[*En Banc.* July 27, 1925.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein. The judgment is therefore affirmed.