[No. 21670. Department Two. May 9, 1929.]

JOHN CHRISTIANSEN *et al., Respondents*, v. T. WILLIAM PARKER, *as Administrator, Appellant.*[1]

[1] Reported in 277 Pac. 445.

*S. A. Keenan* and *Chas. P. Murphy,* for appellant.

*Frank Oleson* and *Alfred C. Oleson (Frank A. Steele,* of counsel), for respondents.

MAIN, J.—This action was brought to rescind a real estate contract on the ground of alleged fraud. The cause was tried to the court without a jury, and, without making findings of fact and conclusions of law, the court entered a judgment rescinding the contract, from which the defendant appeals.

Only those facts will be stated which are supported by the evidence of the respondent. No reference will be made to the evidence offered by the appellant. One Joseph P. Parker owned one hundred and sixty acres of land near the town of Woodinville in King county. Upon this farm, there was a residence and other outbuildings, and a portion of it had been cleared. Across the cleared portion, from north to south, extended three ditches for the purpose of carrying off the water, it being low land. The farm to the south was owned by a Mr. Jurey. The flow of the water was from the north to the south. After leaving the Parker farm, it passed through ditches on the Jurey place. For reasons which are not here material, Jurey had placed a dam in the ditches upon his property and near the south line of the Parker place.

The respondents resided upon, and owned, a four-acre tract a short distance beyond the northern boundary of the city of Seattle, of which John Christiansen cleared three acres. He was approximately forty-three years of age, but had not actively engaged in farming, having been, all his life, a fisherman, carpenter or shipwright. Pursuing a desire to acquire a farm upon which he could make a home for himself

and family, during the month of August, 1926, Christiansen, with his wife and young son, started to look for such a place. When near Woodinville, they met John Parham, a man more than seventy years of age, who was at work in a potato patch. Christiansen inquired of him if he knew of any farm for sale, and was told that the Parker place, nearby, could be purchased. Thereupon Parham accompanied the respondents, and they went over the Parker farm. Upon this visit, the respondents saw the ditches and went within approximately three hundred feet of the south line of the farm. They made no inquiry as to the outlet of the ditches, and nothing with reference to that was stated. Parham represented that thirty acres had been cleared. The respondents, believing that the Parker farm was what they desired, asked Parham to accompany them to their home and the next morning see Parker. This he did. Upon inquiring of Doctor T. William Parker, Joseph P. Parker's son, Parham learned that the owner of the farm was very ill and nothing could be done at that time.

About two weeks later, Parham again interviewed Doctor Parker and was told that the estate was in probate and nothing could then be done. A little later, John Christiansen saw Doctor Parker and made him an offer for the place, which was declined. October 19, 1926, Christiansen wrote Doctor Parker a letter in which he made an offer of $140 an acre for one hundred acres of the farm. This offer was accepted. A preliminary contract was drawn in a few days, at which time Christiansen testified that Doctor Parker represented that thirty acres of the farm had been cleared. November 24, 1926, a formal contract was signed by the parties, at which time a substantial payment was made. Before signing the contract, the respondents had looked over the place two or three times.

The respondents moved upon the farm shortly after the contract had been executed. In January, 1927, Christiansen discovered the dams in the ditches, above referred to, and removed them. In the spring of that year, when he began plowing the cleared portion of the land, he discovered that, under the surface, there were stumps, roots and logs which made the tilling of the soil very difficult. In the fall of 1927, Jurey replaced the dams in the ditches. Sometime later, Christiansen, accompanied by Doctor Parker, removed the dams, much to the irritation of Jurey. The present action to rescind was begun July 5, 1928.

The charges of fraud are: (a) Misrepresentation as to the amount of cleared land, there being twenty-one acres instead of thirty; (b) the overflowing of the land due to the dams in the ditches, which was not disclosed to the respondents at the time of the purchase; and (c) that the cleared land was underlaid with stumps, roots and logs.

 Parham was the agent of the owner of the land only for the purpose of finding a purchaser. Any representation, therefore, that he may have made relative to the character or quality of the farm, though it does not appear that he made any material representation, except as to the number of acres cleared, would not be binding upon the owner. This is well settled by a number of the decisions of this court. *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Johnson v. Williams,* 133 Wash. 613, 234 Pac. 449; *Gudmundson v. Commercial Bank & Trust Co.,* 138 Wash. 355, 244 Pac. 676; *Lemarb v. Power,* 151 Wash. 273, 275 Pac. 561.

 From the facts stated, it appears that the respondents, in January, 1927, had knowledge that the dams had been placed in the ditches, and in the spring of that year, discovered that the cleared land was underlaid with stumps, roots and logs. If the discrep-

ancy in the acreage of the cleared land is as great as they now claim, they would be charged with knowledge of having discovered that fact within a reasonable time. The presumption is that, if the party claiming to be defrauded might, with ordinary care and attention, have reasonably detected it, he had knowledge thereof, and it is his duty to be diligent in making inquiry. The means of knowledge are equal to knowledge, and a clue to a fact which, if followed up diligently, would lead to discovery, is the equivalent of knowledge. *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240, 561; *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360.

The situation then is that, not later than the spring of 1927, the respondents had knowledge of the condition of the cleared land, and were charged with knowledge of the discrepancy in the acreage, as well as what they would have discovered, had they made inquiry with reference to the dams being in the ditches. After this, and in the fall of 1927, the respondents paid $4,000 on the contract. As stated, the action to rescind was not brought until July 5, 1928, more than a year after what is claimed to be fraud was discovered or should have been discovered. The rule is that one who seeks to avoid a contract on the ground of fraud, must proceed with reasonable diligence upon the discovery of the fraud, or the right to rescind will be lost. In *Pearson v. Gullans,* 81 Wash. 57, 142 Pac. 456, it was said:

"This court has been more than liberal, even generous, in allowing a rescission of fraudulently induced contracts for the purchase of land; but our attention is called to no cases holding that a vendee can, after ample time to ascertain the facts and after undertaking to turn the land into a fair bargain on his own account and after a lapse of several months, rescind his contract. The decision of the trial judge is consistent with

the rule announced by this court in the following cases: *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161; *Stelter v. Fowler,* 62 Wash. 345, 113 Pac. 1096, 114 Pac. 879; *Angel v. Columbia Canal Co.,* 69 Wash. 550, 125 Pac. 766; *Wetternach v. Jones-Thompson Inv. Co.,* 77 Wash. 144, 137 Pac. 442.''

In *Blake v. Merritt,* 101 Wash. 56, 171 Pac. 1013, it was said:

''The rule is that one who seeks to avoid a contract which he has been induced to enter into by fraudulent representations of another touching the subject-matter of the contract, must proceed with reasonable promptitude upon discovering the fraud, or the right to rescind will be waived (Citing authorities).''

The respondents did not proceed with reasonable diligence after they should have discovered what they now claim to be fraud, and therefore cannot rescind.

It is said that the discrepancy between the value of the land and the purchase price thereof is so great as to amount to fraud. If there be a great difference between the purchase price and the value of the land, this fact was discovered, or should have been discovered, by the respondents, in the spring of 1927, when they began plowing the land and discovered the stumps, roots and logs referred to.

What has been heretofore said has been on the assumption, without so holding, that, if the respondents had begun the action in time, there would have been ground for rescission.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action.

MITCHELL, C. J., PARKER, FRENCH, and MILLARD, JJ., concur.