[No. 23540.   Department One.   March 9, 1932.]

JOHN WESLEY TROTTER *et al., Respondents,* v. CLAUDE F. WILLIAMS *et al., Appellants.*[1]

*Hazel & LeClair,* for appellants.

*Ryan, Desmond & Ryan, Coleman & Fogarty,* and *Clarence Coleman,* for respondents.

HERMAN, J.—At the time of the transaction out of which this cause developed, plaintiff John Wesley Trotter was seventy-six years of age, very hard of hearing, and possessed of defective vision, being totally

[1]Reported in 8 P. (2d) 980.

blind in one eye. He and his wife, plaintiff Ada Gregg Trotter, were the owners of a farm in Snohomish county, Washington. This farm was encumbered by a first mortgage of three thousand dollars to the Mount Vernon Investment Company, and a second mortgage of five thousand dollars to their son and daughter-in-law, plaintiffs Frank F. Trotter and Edythe J. Trotter.

Defendants Claude F. Williams and Mary E. Williams, his wife, lived in Seattle and were engaged in the business of trading and dealing in real property. H. Vicars Foxton was a real estate agent, who, upon reading the advertisement of the elder Trotters offering their farm for sale, established communication with them with reference thereto. Mr. Trotter, Senior, told Mr. Foxton that he knew nothing about apartment houses or Seattle real estate, and that he had to have money for his farm, livestock and other personal property. As a result of Mr. Foxton's efforts, however, a deal was made between the elder Trotters and defendants, whom Mr. Foxton represented, whereby, in exchange for plaintiffs' farm and personal property and the cancellation of the second mortgage by Frank F. Trotter and wife, the elder Trotters received certain equities in Seattle property represented by defendants to be of considerable value.

Conceiving themselves to have been defrauded, plaintiffs brought suit against defendants. After a trial before the court sitting without a jury, judgment was entered against defendants in the sum of $8,105. From that judgment, defendants appeal.

We present here an epitome of the trial court's findings: On and for a long time prior to August 19, 1930, respondents John Wesley Trotter and Ada Gregg Trotter were the owners of a farm in Snohomish county, Washington, and of the personal property thereon. Their farm was encumbered with a first

mortgage in the amount of three thousand dollars to the Mount Vernon Investment Company, unpaid drainage assessments in the sum of $205.96, and a second mortgage in the amount of five thousand dollars in favor of respondents Frank F. Trotter and Edythe J. Trotter, his wife. H. Vicars Foxton was a real estate broker, with offices in Seattle, Washington, who, as such broker and agent, represented appellants in the transactions hereinafter set forth.

Respondent John Wesley Trotter was an old man, seventy-eight years of age at the time of trial, very hard of hearing, and afflicted with cataracts on both eyes. He was totally blind in one eye, and the sight of the remaining eye was very deficient. Because of his age and infirmities, he was unable to properly care for his farm, and desired to sell it and his personal property.

Appellants claimed to be the owners of two properties in Seattle, Washington, one of which was in Burke's Second Addition to the city of Seattle. This property was subject to taxes and a mortgage for eight thousand dollars, on which there was accrued interest. In the course of negotiations, respondent John Wesley Trotter advised appellants and their agent, Mr. Foxton, that he knew nothing of the value of apartment houses or Seattle property, and that he did not want to exchange his property for Seattle property.

After having been so advised by respondent John Wesley Trotter, appellants and their agent, Mr. Foxton, made a sale of the property in Burke's Second Addition to Seattle to George M. Hayes and Ella A. Hayes, of Seattle, and represented to respondent John Wesley Trotter that the property, together with the improvements thereon, was of the reasonable market value of twenty-five thousand dollars, and that it had

a fixed monthly income of $235, which was sufficient to pay all costs of operation, taxes, insurance and interest on the market value.

Appellants and their agent also represented to that respondent that the Seattle property above mentioned had been sold to Mr. Hayes and wife for twenty-five thousand dollars, who had paid on account the sum of approximately nine thousand dollars, and had entered into a bona fide contract to pay the balance of $7,105 in monthly installments of seventy-five dollars and interest. Mr. Foxton also represented to John Wesley Trotter that Mr. Hayes was financially able to carry out the contract of purchase, as he would inherit approximately sixty-five thousand dollars as an heir, and that the contract to purchase was "bankable paper" which could be sold to any financial concern for cash at a discount of not to exceed five per cent.

August 20, 1930, an exchange agreement was entered into between appellants and respondents, whereby respondent John Wesley Trotter and wife transferred to appellants their farm in Snohomish county in exchange for appellants' equity in the Burke Second Addition to Seattle property, subject to the contract to purchase for $7,105, previously executed by Mr. Hayes, and appellants' equity in certain real property in Green Lake Addition to Seattle, which they represented was of the value of seven thousand dollars, and subject to a mortgage for $2,500. Respondent John Wesley Trotter believed the representations above set forth, and appellants and Mr. Foxton knew that he believed them and relied upon their statements as to the value of the properties and the financial worth of Mr. Hayes.

The statements of appellants and their agent, Mr. Foxton, were false and fraudulent, and known by them

to be false and fraudulent, at the time they were made. George M. Hayes did not, nor did he expect to, inherit any estate whatsoever; he was seventy-six years old and had no money. It was impossible for Mr. Hayes to pay the balance of $7,105, unless it could be paid from the net income or earnings from the Seattle property in Burke's Second Addition, which appellants and their agent knew could not be done.

Mr. Hayes could not and did not pay any of the installments due under the contract to purchase, and abandoned the property. Respondents were obliged to take over possession of the property and operate it. The returns from that property were not sufficient to more than pay the expenses of operation, the care and upkeep. The mortgage was foreclosed and the property sold. The contract of sale from appellants to George M. Hayes had no value, and the property in Burke's Second Addition to Seattle, at the time it was traded to respondents, had no value in excess of the encumbrances for the amount of the mortgage and taxes.

The property situated in Green Lake Addition to Seattle, which was represented to be of the value of seven thousand dollars, had no value in excess of six thousand dollars, as was known to appellants and their agent. Appellants and Mr. Foxton knew that John Wesley Trotter was relying upon their statements as to the true value of the property at the time the exchange agreement was entered into. At the time of trial, appellants still had the farm they had secured from respondents, but had disposed of a substantial part of the personal property.

A study of the testimony convinces us that the trial court's findings were correct. The evidence clearly and satisfactorily overcomes the presumption of hon-

esty and legality which prevails in favor of the ordinary business transactions between men. There was also ample evidence to demonstrate clearly that, for a considerable period of time prior to the transaction out of which this cause arose, there had existed a close relationship between appellants and their agent, Mr. Foxton, who had served as intermediary between them and other parties to deals involving lands. Although the trial court made no express finding on the subject, we are of the opinion that it was shown by circumstantial evidence that Mr. Foxton had authority to make such false representations as were made by him when appellants were not present.

■ Appellants' first three assignments of error are predicated upon the theory that the evidence does not justify a judgment against them. They rely upon the case of *Christiansen v. Parker,* 152 Wash. 149, 277 Pac. 445, in which the court said:

"Parham was the agent of the owner of the land only for the purpose of finding a purchaser. Any representation, therefore, that he may have made . . . would not be binding upon the owner. This is well settled by a number of the decisions of this court. *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Johnson v. Williams,* 133 Wash. 613, 234 Pac. 449; *Gudmundson v. Commercial Bank & Trust Co.,* 138 Wash. 355, 244 Pac. 676; *Lemarb v. Power,* 151 Wash. 273, 275 Pac. 561."

In the case at bar, however, there was a finding amply supported by the evidence that false and fraudulent representations, which were relied upon by respondents, were made to respondent John Wesley Trotter by appellants and their agent, Mr. Foxton. The fact that, in the instant case, false representations were made by appellants as well as by their agent, distinguishes the case at bar from *Christiansen v. Parker,*

*supra.*  In our opinion, the evidence justifies the judgment.

■  Appellants' fifth assignment of error is a complaint concerning the action of the trial court in admitting certain oral evidence.  Appellants contend this was error, on the ground that it varied the terms of the written exchange agreement.  This claim of error is not well founded.  In an action brought for relief because of fraud, it is competent to show all of the circumstances surrounding the transaction—oral promises and agreements contradicting and varying the writing, as well as all other matters—not for the purpose of showing a different contract from that actually entered into, but for the purpose of showing the contract actually entered into to be fraudulent and void. *Gordon v. Hillman,* 91 Wash. 490, 158 Pac. 96.

The sixth assignment of error is based upon denial by the superior court of appellants' motions against respondents' complaint to make more definite and certain, and to strike.  An examination of the complaint and the motions indicates neither abuse of discretion nor mistake of law by the trial court, and we find no error in the rulings complained of.

■  Appellants' seventh assignment of error has to do with the action of the trial court in granting respondents' motion to amend, during the trial, the respondents' amended complaint to show representations made by H. Vicars Foxton.  In granting respondents' motion, the court said:

"This is a matter that is addressed to the court's sound judicial discretion.  I have no reason, of course, to doubt your word, Mr. Ryan, that you had no personal interview with the Mr. Trotter now upon the witness stand until, as you have said, day before yesterday.  .  .  .  And in the light of that, I will permit that amendment."

Rule of Court III, 140 Wash. xxxvi, paragraph 2, provides as follows:

"The court, upon motion, at any stage of an action, may order or give leave to either party to alter or amend any pleading, process, affidavit or other document in the cause, to the end that the real matter in dispute, and all matters in the action in dispute, between the parties may be completely determined as far as possible in a single proceeding. But the order or leave shall be refused if it appears to the court (a) that the motion was made with intent to delay the action, or (b) that the motion was occasioned by lack of diligence on the part of the moving party and the granting of the motion would unduly delay the action or embarrass any other party, or (c) that, for any other reason, the granting of the motion would be unjust."

The trial court did not err in permitting the amendment.

■ Appellants urge as the eighth assignment of error that the trial court erred in refusing to grant appellants' motion for a continuance when, in the course of the trial, the cause was changed from a suit for rescission to an action for damages. The trial court, in ruling upon this motion for a continuance, said:

"Now, I realize that apparently counsel for defendants is of different mind and probably is not here today prepared to offer evidence upon the questions of values, at least, perhaps not so prepared as to all the properties, and I will not deny to those ones the right to bring their evidence here and to submit it, but I don't see that is any reason why we should work a continuance at this time. I don't see why the defendants cannot proceed with their proofs insofar as they have their witnesses here available. . . .

"I see no reason why I should not hear the witnesses that are present. If it becomes necessary to take a continuance later, for some purpose, why we will take it."

No further request by appellants for a continuance because of the change in the nature of the suit is disclosed by the record, and it is manifest there was neither abuse of discretion nor error in the refusal of the trial court to grant the continuance.

Appellants' fourth assignment of error is the refusal to grant a new trial. The judgment of the court being consistent with the evidence, and there being called to our attention no errors of law in connection with the trial of the cause, we hold that the trial court did not err in refusing to grant a new trial.

The judgment is affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and BEELER, JJ., concur.