G. GRAY, *Appellant,* v. WIKSTROM MOTORS, INC., *et al.,*
*Respondents.*[1]

[1]Reported in 128 P. (2d) 490.

*J. P. Tonkoff*, for appellant.

*Lincoln E. Shropshire*, for respondent.

STEINERT, J.—Plaintiff brought suit to recover damages for fraud alleged to have been perpetrated upon

him by defendants in the sale to him of an automobile. At the conclusion of plaintiff's evidence, the court granted defendants' motion for nonsuit and thereafter entered judgment of dismissal. Plaintiff has appealed.

The question presented for our decision is whether the evidence was sufficient to take the case to the jury. In determining that question, we must proceed upon the well-settled rule that a challenge to the sufficiency of the evidence or a motion for nonsuit admits the truth of the evidence of the party against whom such challenge or motion is made and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted in the light most favorable to the party toward whom the challenge is directed, and most strongly against the challenging party. *Lindberg v. Steele,* 5 Wn. (2d) 54, 104 P. (2d) 940; *Scholz v. Leuer,* 7 Wn. (2d) 76, 109 P. (2d) 294; *Graham v. Police & Firemen's Ins. Ass'n,* 10 Wn. (2d) 288, 116 P. (2d) 352; *Hill v. Parker,* 10 Wn. (2d) 517, 122 P. (2d) 476. Interpreted according to this rule, the evidence in the case may be stated as follows:

Appellant, Dr. G. Gray, is an osteopathic physician residing in Yakima, Washington. Respondent Wikstrom Motors, Inc., is a corporation engaged in selling various types of Buick automobiles in that city. Respondent Phil Crawford is an automobile salesman and has been employed as such by the respondent corporation since 1931.

In the latter part of June, or the early part of July, 1940, respondent Crawford called at appellant's home and inquired of him whether he would be interested in purchasing a new Buick automobile. At that time appellant owned a Hudson car, which had been run only about forty-seven hundred miles and was in first-class condition. Appellant informed Crawford that he was not in the market for a new car unless he could

obtain in return one thousand dollars for his Hudson car. Crawford suggested that they might be able to make a deal on that basis if appellant should purchase one of the larger, or higher-priced, Buick cars, and stated that he would take the matter up with Mr. Wikstrom, who was the president and manager of the respondent corporation.

Shortly thereafter, Crawford called again at appellant's home, bringing with him a large, illustrated catalogue descriptive of the various types, or models, of Buick cars. The catalogue, which appears as an exhibit in the case, showed nine different styles or models, varying in size, color, and weight, but it did not show their respective selling prices. The larger, or higher-priced, models were designated as series 90, and the smaller models were described as series 80. Appellant knew nothing about the price of any of them. In the conversation which then took place, Crawford directed appellant's attention to the picture of a car described as model 81, which was one of the smaller models, and stated that the retail price thereof, including certain specified accessories and tax charges, but with a different kind of tire mount, was $2,274.57. Several members of appellant's family were present and took part in the conversation. On the next day, Crawford returned again and, in the negotiations which followed, agreed to allow appellant one thousand dollars for his Hudson car as a full down payment on a model 81 Buick car, as previously described by reference to the catalogue, and to accept the balance of the purchase price in twenty-four equal monthly installments. During none of these negotiations was any car exhibited to, or inspected by, the appellant, and in fact the respondent did not have any of the 81 models in its possession in Yakima. It was therefore necessary for the parties to go to Seattle in order that appellant might

examine the car which he was to receive in the transaction.

On the following day, July 25, 1940, Crawford took appellant and his wife and son, together with two of their friends, to Seattle to see the new car, which was on the floor of the display room at the Seattle Buick agency. During the course of the trip, Crawford reiterated to his guests his former statement that appellant was to be allowed one thousand dollars for his Hudson car as full down payment on the Buick. Arriving in Seattle, the party went to the Seattle agency where the new car was kept. After inspection of the car, followed by some further negotiations concerning it, appellant concluded to make the deal. Mr. Wikstrom knew all about the transaction which Crawford was negotiating with appellant.

Crawford thereupon had appellant sign an order for the purchase of "one Buick 81 automobile." The order specified the price of the car as $1,726.57, instead of $2,274.57 as formerly represented by Crawford, and the trade-in value of the Hudson car was given as $452, instead of one thousand dollars as previously agreed. Noting these lessened values as they appeared upon the order, appellant asked Crawford for an explanation. Crawford thereupon explained that the sale of the new car was being financed by his company through GMAC (General Motors Acceptance Corporation) which required a discount of $548 on the Buick car, and that this in turn would necessitate the same discount on the Hudson car. Crawford further explained that an equal discount taken upon both cars would not affect the agreed allowance of one thousand dollars to appellant for the Hudson car. The explanation was accepted by appellant, who was under the belief all this time that the standard selling price of the Buick car was $2,274.57, as Crawford had previously represented it to

be, and it is apparent that if that were the true selling price appellant would still have been receiving the full allowance of one thousand dollars for his car, despite the reduced values specified in the selling order. At any rate, the negotiations between the parties were then and there concluded upon that understanding, whereupon appellant took delivery of the new Buick car and drove it to his home in Yakima.

Two days later, July 27, 1940, Crawford called at appellant's home and had him sign, in duplicate, a conditional sale contract covering the Buick car. That instrument specified the total selling price of the car, on the installment plan, as $1,827.49 and allowed a credit of $452 for the Hudson car. Both copies of the contract were retained by Crawford, and when appellant asked him for one of the copies he was told that GMAC would send him one later. Appellant did not receive a copy of the contract, however, until about the middle of August. When offered in evidence at the trial, the contract contained a schedule of payments to be made by the purchaser which provided that an installment of $275.57 was payable on August 5, 1940, and the balance in equal monthly installments of $45.83 beginning September 6, 1940. When appellant signed the contract on July 27th, however, it did not contain the item of $275.57.

Shortly after the delivery of the Buick car on July 25th, appellant's wife called on an insurance agency in Yakima for the purpose of transferring the policy of insurance covering the Hudson car to the new Buick. Mrs. Gray did not have sufficient information regarding the description and price of the new car, so the insurance agent telephoned to the respondent corporation and obtained the necessary details. He was advised, among other things, that the actual cost of the car and equipment to the purchaser was $1,726. This fact,

however, was not communicated to Mrs. Gray at that time. The new policy, which was sent from Berkeley, California, was not delivered to appellant until near the end of August.

During the latter part of that same month, a representative of GMAC made a demand upon appellant for the payment of $275.57 claimed to be due on August 5th. Appellant denied that he owed the amount or that he had agreed to pay it, and at once got in touch with Crawford, who stated that "We will make it right." Crawford thereafter presented to appellant an instrument, which evidently was a form customarily used by GMAC, purporting to be a rearrangement of the installment payments. That instrument eliminated the item of $275.57, and while it increased the total amount to be paid by appellant, it did not specify the number or the amount of the respective installments. Later, appellant was advised by GMAC that his monthly installments would be $58.46 each, but that he would not be required to pay the $275.57.

About this same time, appellant received his new insurance policy which showed the cost of the car as being $1,726, instead of $2,274.57 as had been represented to him by Crawford. This circumstance, added to the various incidents that had successively taken place, as above described, aroused appellant's suspicions. He therefore called on Mr. Wikstrom, the manager of the company, and complained that he had been overcharged in the price of the Buick which he had recently purchased. Mr. Wikstrom thereupon referred to a slip of paper which he had in his possession and then assured appellant that the actual sale price of the car was $2,274.57, just as it had been previously represented to appellant, and further stated that he himself had quoted that price to Crawford. At the trial of the case, it was shown by the testimony of Mr. Wik-

strom, called as a witness for appellant, that the standard price of the model 81 car, which appellant bought, was $1,958, and that the price of the larger, or model 90, car was $2,276.

In this connection it is but proper to state that some of appellant's own testimony was not altogether in harmony with the evidence as we have outlined it above, and that it was also to a great extent squarely contradicted by the testimony of both Wikstrom and Crawford, who were called as witnesses by appellant. These circumstances, however, do not lessen the force of the rule that on a motion for nonsuit the evidence must be considered in the light most favorable to the party against whom the challenge is made, for such party is not bound by the unfavorable portion of the evidence. *Lindberg v. Steele, supra.*

Upon this evidence as we have stated it, the jury could have found (1) that Crawford represented to appellant that the standard selling price of the model 81 Buick car was $2,274.57, when in fact it was only $1,958, or possibly less; (2) that it was fully understood and agreed that for his Hudson car appellant was to have a credit of one thousand dollars on the Buick car, whatever the correct standard selling price of the latter car may have been; (3) that through plausible, though misleading, statements made by Crawford concerning the method of arriving at the amount of discount on the two cars, appellant was led to accept considerably less than a one-thousand-dollar trade-in value for his Hudson car; (4) that appellant relied upon Crawford's representations and explanations; and (5) that Crawford's method of bringing about the sale of the Buick car was with the full knowledge and consent of Wikstrom, the president and manager of the respondent company.

The elements necessary to establish fraud are:

(1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity; (5) his intent that it shall be acted upon by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom the representation is addressed; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; and (9) his consequent damage. *Webster v. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428; *Andrews v. Standard Lbr. Co.*, 2 Wn. (2d) 294, 97 P. (2d) 1062. Respondents, relying upon the foregoing rule, contend that elements numbered (1), (2), (8), and (9) are lacking in this instance. We cannot agree with that contention.

The representation as to the standard selling price of the model 81 Buick car was not a mere expression of opinion of the intrinsic value of a particular car, but was a representation of the standard market value of all cars of that model. According to the weight of authority, representations of market price or market value are not necessarily mere representations of opinion, but are, or at least under some circumstances may be, representations of fact on which fraud may be predicated. 22 Am. Jur. 833, Fraud and Deceit, § 62; note (1931) 71 A. L. R. 622. False representations as to the value of a thing sold, when made with the intent to deceive, and when they do deceive the purchaser to his injury, are actionable. *Horowitz v. Kuehl*, 117 Wash. 16, 200 Pac. 570; *Blewett v. Ward*, 159 Wash. 651, 294 Pac. 577.

The jury could justifiably have found, in this case, that the representation as to value, if made, was put forth for the purpose of deceiving appellant, and that he was in fact deceived thereby. The representation concerning the price of the Buick car was undoubtedly material in this instance, for, as appears by

the evidence, it was a vital factor in inducing appellant to make the purchase of the particular car and to turn in his own car as part of the purchase price.

■ Under the circumstances here shown, appellant had the right to rely upon the representation. He was not familiar with Buick cars and their various models, or with their respective standard selling prices, and it was not incumbent upon him to challenge the truth of Crawford's statement or to endeavor to establish its falsity by making inquiries of other dealers. He was entitled to accept the statement as that of a reputable dealer who was fully conversant with the established price of the article offered for sale.

■ That appellant was damaged, there can be no doubt, because, if his testimony is to be believed, he received for his Hudson car an amount substantially less than what he was entitled to receive; or, to put the matter conversely, he paid for the new car an amount substantially greater than its market price or value.

■ Respondents further contend that appellant waived the alleged fraud by entering into a new arrangement concerning the subject matter, after he had discovered that he had been defrauded. This contention has reference to the instruments which appellant signed after he had taken delivery of the new car. The evidence is both confusing and conflicting as to the exact time when appellant became fully aware of the fact that he had been overcharged, or as to when his suspicions were aroused in that respect. After reading all the evidence upon that issue, we are unable to say, as a matter of law, either that he discovered the fraud before the new arrangement was made, or that he was in possession of information which, if promptly acted upon, would have led to a discovery prior to making the new arrangement. It was a question for the jury to decide.

Finally, respondents contend that, in any event, the judgment of nonsuit in favor of respondent Wikstrom Motors, Inc., should be affirmed because appellant failed to prove that Crawford was acting within the scope of his employment or had authority to make the representations relied upon by appellant. In making this contention, respondents point out and rely upon the fact that the conditional sale contract contained a paragraph which provided:

"No warranties, express or implied, representations, promises or statements have been made by the seller unless endorsed hereon in writing."

While there is some diversity of opinion as to the effect of such provisions in a contract of sale, there is admittedly considerable authority supporting the view that, where a contract is procured by an agent, to be submitted to his principal for the latter's acceptance, and the contract provides that there are no agreements or representations between the seller's agent and the buyer not incorporated therein, the buyer will be precluded from asserting other and additional fraudulent agreements and representations upon the part of the seller's agent. 2 Am. Jur. 284, Agency, § 365. The cases are assembled and analyzed in annotations appearing in 75 A. L. R. 1032, 127 A. L. R. 132, and 133 A. L. R. 1360.

That principle, however, is not controlling here, because in this case there was evidence from which the jury could have found that the representations made to appellant by Crawford were made with the knowledge and upon the authority of Wikstrom, the president and manager of the company. The purpose of the rule above referred to is to protect the honest seller against a dishonest agent, but it can have no application in a case where the seller himself knows beforehand, and inspires, the representations which the agent makes.

We are convinced that the evidence in this case, produced by appellant alone, though conflicting in several respects, was nevertheless sufficient to carry the case beyond a motion for nonsuit. The judgment is therefore reversed and a new trial ordered.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.

[No. 28712.    Department Two.    August 7, 1942.]

[1]Reported in 128 P. (2d) 486.