[No. 31154. Department One. August 23, 1950.]

PEOPLES NATIONAL BANK OF WASHINGTON, *Respondent*, v. WILLIAM LOYD BROWN *et al.*, *Appellants*, WILLIAM E. SANDER *et al.*, *Respondents*.[1]

[1]Reported in 221 P. (2d) 530.

*James M. Ballard, Sam R. Sumner,* and *Sam R. Sumner, Jr.,* for appellants.

*Shorett, Taylor & Revelle,* for respondents Peoples National Bank and Sanders.

*Maxwell, Seering, Jones & Merritt,* for respondents Olson.

BEALS, J.—For some time prior to March, 1947, an organization known as "Brehm's" was operating restaurants in the city of Seattle, one being located at 1409 Fifth avenue. At the same time, William E. Sander and three of his sons were operating fountain lunch counters in Seattle. Mr. Sander purchased the restaurant in question from Brehm's, the latter continuing to operate it for some weeks at Sander's request. Sander decided to sell the restaurant and listed it with Carl A. Olson, a real-estate agent in Seattle, doing business as Seattle Realty Company.

William Loyd Brown, a resident of Chelan county, had a friend, Willard L. Kaupp, who desired to engage in the restaurant business. Olson's agents contacted Kaupp, who informed Brown concerning the restaurant. Brown went to Seattle, where he and Kaupp met Olson's agents and examined the restaurant, the salesmen informing them that the equipment was in good condition, having been "gone over" within the past year. The salesmen also stated that the receipts of the restaurant during the months of January and February, 1947, amounted to over thirteen thousand dollars. Kaupp and Brown were informed that Sander owned the restaurant but had never operated it, Brehm's having continued the operation at Sander's request. Kaupp made some notes concerning the information given them, but neither he nor Brown ever contacted any of the persons who had been concerned with the operation of the restaurant.

Brown, who was a farmer and business man of means, owned an ice cream counter in Seattle, and a small grocery which was operated by his brother, but had never been in the restaurant business. He visited the restaurant several times, but never met Sander, and, finally, agreed with Olson to purchase the restaurant for ten thousand dollars. A contract of conditional sale was prepared and executed by the parties, Brown paying four thousand dollars down, the contract calling for payment of the balance at the rate of $285.72 a month. Sander, who had secured from the owner a lease on the premises in which the restaurant was located, assigned his interest in the lease to Brown, as part of the transaction.

Sander then borrowed six thousand dollars from the Peoples National Bank of Washington in Seattle, a national banking corporation, assigning the contract to the bank as security for the loan.

The first payment under the contract fell due May 14, 1947, and Brown, having become dissatisfied with his purchase, refused to make any payment on the contract. About a month thereafter, Brown paid the interest due on the first payment, and later paid the second month's interest. Brown complained to Sander, and listed the restaurant with Olson, with the result that Olson negotiated a sale of the business to one Wilkins for eight thousand dollars net to Brown. Wilkins made a down payment of two thousand dollars, but, after having been in possession of the restaurant for six weeks or thereabouts, he abandoned the business.

Thereafter, Peoples National Bank of Washington instituted this action against William Loyd Brown and Emily E. Brown, his wife, demanding judgment for the full amount due under the contract of purchase.

On motion of the defendants Brown, William E. Sander and Helen M. Sander, his wife, together with Mr. Sander's three sons (who were their father's partners) and their respective wives, and Carl A. Olson and Gladys C. Olson, his wife, doing business as Seattle Realty Company, were made additional parties defendant to the action.

Defendants Brown then filed their answer to the complaint, admitting the execution of the contract with Sander for the purchase of the restaurant, and affirmatively alleging Sander's ownership of the restaurant. The defendants further alleged that, since the institution of the action, the plaintiff and Sander had treated the restaurant property as their own and had removed the same from the restaurant and disposed of it.

By way of a cross-complaint, defendants Brown alleged that defendant Carl A. Olson, acting as Sander's agent for the sale of the restaurant, importuned Brown to purchase the restaurant, knowing that Brown had no experience in the restaurant business and had never owned an interest in a restaurant; that the additional defendants, including Olson, entered into a conspiracy to sell the restaurant to Brown at a sum greater than its value; that, in carrying out the conspiracy, they made false and fraudulent representations concerning the value of the restaurant and the amount of its business, and that Brown was persuaded to purchase the restaurant as hereinabove set forth.

Defendants Brown prayed for dismissal of the action and for judgment against the additional defendants in the sum of two thousand dollars, later, by amendment, increasing their demand to eight thousand dollars.

The plaintiff replied, denying the affirmative matter in the answer and demanding judgment as prayed for in its complaint. Defendant Sander answered Brown's cross-complaint, denying the affirmative allegations thereof and asking that Brown's cross-complaint be dismissed, also praying for judgment against Brown, if the plaintiff should not recover judgment against him, and, by cross-complaint, asking for affirmative relief. Defendants Olson answered Brown's cross-complaint, denying the affirmative allegations thereof and asking for dismissal of the cross-complaint. Brown answered, denying the affirmative allegations of Sander's cross-complaint.

The issues having been finally completed, the action was tried to the court, sitting with a jury, with the result that, at the close of the evidence, the trial court dismissed

Brown's cross-complaint with prejudice, and, Sander having moved for dismissal of his cross-complaint without prejudice, the court granted that motion. The plaintiff then moved the court for a directed verdict in its favor against defendants Brown, and, the court having granted that motion, the jury, under instructions of the court, returned its verdict in favor of the plaintiff in the sum of $6,508.24. The court then entered judgment in plaintiff's favor. Defendants Olson were awarded judgment for their costs.

From this judgment, defendants Brown have appealed.

We refer to the appellant William Loyd Brown as Brown. Of the respondents Sander, William E. Sander was the only one who had anything to do with the transaction. We refer to him as Sander, and to respondent Carl A. Olson as Olson.

Brown visited the restaurant on several occasions prior to signing the contract of purchase, but never saw and never attempted to contact Sander. The contract of sale and accompanying papers were prepared by Olson. Brown's friend, Kaupp, acted as manager of the restaurant after its purchase by Brown, continuing the employment of the same personnel. After a few weeks, the carbonator used in connection with the soda fountain failed and was replaced at a cost of over three hundred dollars. When the first payment under the contract fell due, Brown and Kaupp called on Olson and complained of alleged misrepresentations concerning the business. Brown tendered to the respondent bank twenty-five dollars on account of interest, which the bank refused, although it was later accepted. When the second payment came due, Brown and Kaupp called on Sander, complaining that Brown had been "swindled." Sander answered by saying that he had made no representations to Brown or to anyone on his behalf, and that any representations concerning the restaurant had been made by Olson. Brown made another twenty-five-dollar payment on account of interest, in lieu of the second payment due under the contract, which payment the bank accepted, with Sander's consent.

Brown then retained Olson to sell the restaurant and it was later sold to Wilkins for eight thousand dollars, with

a down payment of two thousand dollars. Upon request, Sander approved the assignment of the lease to Wilkins, who soon became dissatisfied with the operation of the restaurant and failed to pay the rental due under the lease. Sander then notified Brown, who came to Seattle but, apparently, accomplished nothing. The lessor of the premises served on Sander a three-day notice to quit or pay rent. A copy of this notice was forwarded· by Sander to Brown, who received it September 26th. Brown took no action, so Sander, being responsible under the lease, removed the restaurant properties from the premises and stored them in Brown's name advising him of this action.

The foregoing facts were not disputed.

Sander's cross-complaint for the recovery of the expenses incurred in moving the restaurant property from the rented premises was dismissed on his own motion.

Appellant makes the following assignment of errors: (1) The trial court erred in holding that appellant was not entitled to rely upon the representations made by Olson and his employees; (2) the trial court erred in holding that the representations made by Olson and his employees were irrelevant because the record did not show that such representations were made with Sander's knowledge or approval or that they were ever ratified by him; (3) the trial court erred in holding that any fraud which inhered in Olson's representations to appellant had been waived, and (4) the trial court erred in holding that the respondent bank had the right to maintain an action against appellant.

A challenge to the sufficiency of the evidence admits the truth of the evidence of the opposing party and requires that the evidence be interpreted more strongly against the moving party. *Gray v. Wikstrom Motors,* 14 Wn. (2d) 448, 128 P. (2d) 490.

Our recent opinion in the case of *Stenson v. Thrush,* 36 Wn. (2d) 726, 219 P. (2d) 977, is in point in connection with appellant's first three assignments of error as against respondent Sander. In the case cited, it appeared that the plaintiffs Stenson, who desired to purchase a business, noticed an advertisement in a Spokane paper, inserted by

defendant Jack Hanson, a real-estate broker, listing a service station and grocery store owned by the defendants Thrush. The property was represented as producing a net income of seven thousand dollars a year. The plaintiffs called upon Hanson, who showed them the property. A few days later, the plaintiffs, with Hanson, again visited the service station and asked to see the books. Defendant Thrush opened a book and showed them one page. Two days later, August 4th the plaintiffs entered into an agreement to purchase the property for twenty-three thousand dollars, and made the first payment. Stensons took possession of the property August 23rd, prior to which date they had found it necessary to have a well dug on the property to procure a sufficient supply of water. Soon after Stensons took possession, it became apparent that the business, instead of earning a net income of seven thousand dollars a year, was in fact operating at a loss. Plaintiffs then instituted the action referred to for the recovery of damages, alleging that the property had been fraudulently represented to them in three particulars: (1) that the business netted seven thousand dollars a year; (2) that the stock on hand when the agreement to purchase was executed was worth fifteen hundred dollars and that a stock of that value would be turned over to plaintiffs, and (3) that the defendants had secured a regular source of supply of water for domestic purposes, which would be available to plaintiffs.

The action was tried to a jury, which returned a verdict in plaintiffs' favor against Thrush, who appealed to this court from a judgment entered on the verdict, and against Hanson, the agent, who did not appeal. From the opinion, it appears that plaintiffs' case rested primarily upon the representation in the advertisement that the business produced a net income of seven thousand dollars a year, which representation was prepared by Hanson, there being no evidence to show that Thrush had knowledge of this statement, either before or after it was published. This court held that the trial court erred in instructing the jury that any false and fraudulent representation by Hanson, as Thrush's agent,

was the act of Thrush, who would be liable therefor, and that

"A real-estate broker is, generally, a special agent with limited powers and is, therefore, closely restricted within the terms of his agency. 8 Am. Jur. 1016, 1017, § 59. Hanson was given the property to advertise, and his implied authority extended no further than to describe the property, and to obtain a purchaser. The powers of a real-estate broker in this state have long been subject to limitations, and one dealing with him is chargeable with notice of the limitations of his power. *Kosten v. Fleming,* 15 Wn. (2d) 523, 131 P. (2d) 170; *Pacific Mutual Life Ins. Co. v. Munson,* 115 Wash. 119, 196 Pac. 633. The fraudulent representations of Hanson, the special agent, were not those of Thrush, in the absence of actual authority to make them."

Citing the case of *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180, the judgment appealed from was reversed and the cause remanded for a new trial.

■ The rule above stated by the court applies to a broker acting as an agent for the sale of a restaurant, as well as to one who represents his principal in negotiating the sale of real estate.

In the case of *Samson v. Beale, supra,* it appeared that the defendants, who were nonresidents, owned a tract of improved real estate in Tacoma, the property being cared for by their local agents. Plaintiff was interested in purchasing the property and examined it in the company of one of defendants' agents. The agent represented to plaintiff that there was a solid brick foundation wall all around the structure located on the property, also extending under the building's partition walls, and that the wall referred to was in good condition and would answer its purpose for a long time. Defendants' agent made certain openings in the building to show plaintiff the brick work, causing him to be satisfied as to the truth of the representations made. The plaintiff made an offer for the property, also agreeing to pay the agent's commission. The offer was accepted and the transaction closed. Later, plaintiff discovered that the foundation of the building was faulty and, upon investigation, he discovered that the agent's representations were

untrue, in that the foundation wall did not extend around the entire building.

Plaintiff then brought suit against defendants, alleging the foregoing facts; that the agent's representations were known by defendants and their agents to be false, and that plaintiff had been compelled to spend twelve hundred dollars in placing a sufficient foundation under the building, for which sum he demanded judgment. By their answer, defendants admitted that the persons who showed the building to plaintiff were their agents, but that their powers were limited to the collection of rents and to obtaining and submitting to defendants offers for the property, all other allegations of the complaint being denied.

The action was tried to a jury which returned a verdict for the plaintiff and, from the judgment entered on the verdict, defendants appealed. Among other assignments of error, defendants contended that the trial court erred in overruling their motion for a nonsuit, also assigning error upon several of the court's instructions. This court was of the opinion that, from the evidence introduced by plaintiff, it appeared that defendants' agents had authority to find a purchaser and receive the purchase money, but that plaintiff knew that his offer must be submitted to defendants for approval or rejection before proceeding further, and that he also knew "that the agents had not full power even to conclude the terms of a sale without submission to appellants [defendants]." Plaintiff also admitted that when he examined the building with defendants' agent, and before the offer was made, the agent told him that one Bonnell, who was then living in Tacoma, had superintended the construction of the brick foundation wall, and that he therefore knew the name of the person from whom he could procure exact information concerning the construction of the wall. He did not interview this person until after the completion of the transaction, when Mr. Bonnell informed him of the exact condition of the wall. It further appeared that plans for a complete brick foundation wall had been prepared by Mr. Bonnell three years prior to the transaction above referred to, but these plans were later abandoned and the

work was not done as shown thereon. The plans, however, were left in the possession of defendants' agents and were shown to plaintiff prior to the consummation of the deal. In connection with this phase of the evidence, this court held that the plans were no proof concerning the work which had actually been done and, as plaintiff knew that the plans had been prepared by Mr. Bonnell, he "was again forcibly informed that he could easily go to Mr. Bonnell and get the true information before he completed the purchase."

Plaintiff argued that the authority to collect and remit rents, pay taxes, and attend to ordinary repairs, toegther with authority to sell, "carried with it authority to bind the principals by any representations made by the agents." This court held to the contrary, and, after citing authorities and reviewing the evidence, reversed the judgment and remanded the cause, with instructions to grant the motion for a nonsuit.

In the case of *Johnson v. Williams*, 133 Wash. 613, 234 Pac. 449, 238 Pac. 581, the plaintiff sought a judgment against the defendants for false representations alleged to have been made by defendants' agent, whereby plaintiff was induced to enter into a contract for the purchase of a tract of improved land. The case was tried to the court, sitting with a jury, and, at the conclusion of the plaintiff's case, the trial court, on defendants' motion, entered judgment dismissing the action, from which judgment the plaintiff appealed. It appeared that the defendants authorized an agent in Yakima to find a purchaser for the property. Thereafter, a salesman showed the property to the plaintiff, who made a deposit subject to approval of the owner. A formal contract of sale and purchase was executed by the parties, plaintiff paying an additional two thousand dollars and agreeing to pay the balance at stipulated times. About three years later, when plaintiff was in default on the contract, he instituted the above-entitled action, basing a claim for damages upon representations that he alleged had been made by the agent who showed him the property. There was no claim that defendants made any such representations or personally misrepresented the property or knew of

the statements made by the agent. The real-estate agent with whom the property had been listed had no authority to do anything more than find a purchaser for the property. This court held that the false representations which it was alleged the agent made, constituted no basis for the maintenance of the plaintiff's action. Citing the case of *Samson v. Beale, supra,* a department of this court affirmed the judgment of the trial court and, upon a rehearing before the court sitting *En Banc,* the Departmental opinion was approved.

The case last cited was followed in *Gudmundson v. Commercial Bank & Trust Co.,* 138 Wash. 355, 244 Pac. 676, in which a judgment in favor of the plaintiff was reversed and the plaintiff's action dismissed. The plaintiff vendee of a tract of land had sued the vendor, basing his claim upon alleged false representations concerning the land made by a real-estate broker, who had authority from the owner only to find a purchaser.

The cases of *Lemarb v. Power,* 151 Wash. 273, 275 Pac. 561, and *Hardinger v. Till,* 1 Wn. (2d) 335, 96 P. (2d) 262, are to the same effect.

The supreme court of Arizona, in the case of *Light v. Chandler Improvement Co.,* 33 Ariz. 101, 261 Pac. 969, 57 A. L. R. 107, reached the same conclusion, citing and following several cases, including *Samson v. Beale, supra.* See, also, 12 C. J. S. 343, Brokers, § 136.

Following the case of *Carstens v. McReavy,* 1 Wash. 359, 25 Pac. 471, this court has several times held that it is the law of this state that authority granted to an agent to sell real estate does not give authority to enter into a contract for conveyance. *Armstrong v. Oakley,* 23 Wash. 122, 62 Pac. 499; *Hardinger v. Columbia,* 50 Wash. 405, 97 Pac. 445; *Hutchins v. Wertheimer,* 51 Wash. 539, 99 Pac. 577; *Northwest Poultry & Dairy Products Co. v. A. C. Fry Co.,* 27 Wn. (2d) 35, 176 P. (2d) 324; *Lee v. Estabrook,* 28 Wn. (2d) 102, 181 P. (2d) 830.

██ In the case at bar, there was no evidence to the effect that Olson had authority to make any representations whatever concerning the restaurant. He was simply re-

tained by Sander to find a purchaser. Appellant Brown had every opportunity to make any investigation he desired concerning the restaurant and its business. He never sought an interview with Sander nor did he seek information from any employee of Brehm's, who had been operating the restaurant and was still doing so when appellant examined it.

Appellant's cross-complaint states a cause of action at law for damages. It was incumbent upon him to show, by competent evidence, all of the common-law elements of fraud, namely:

"(1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity; (5) his intent that it shall be acted upon by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom the representation is addressed; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; and (9) his consequent damage." *Gray v. Wikstrom Motors,* 14 Wn. (2d) 448, 456, 128 P. (2d) 490.

In support of his contention that the amount of business done by the restaurant was less than represented, appellant introduced in evidence a memorandum book kept by an employee of Brehm's, who was in charge of personnel at the restaurant. This record was kept by the employee for her own convenience and began January 22, 1947. Apparently, it was not a complete record of the receipts, and no evidence was introduced as to the amount of money taken in prior to the date mentioned. From the evidence introduced, the jury could only speculate as to the amount of the receipts for January and February.

Concerning the equipment in the restaurant, the evidence introduced by appellant was to the effect that Olson had represented that the equipment had been "gone over" during the previous year, and that it was in good shape and would not cause any trouble. No evidence was introduced tending to prove that the equipment had not been gone over. It did appear that the carbonator failed to function after appellant's purchase of the business, but no evidence was introduced even tending to prove that it was known to be in bad order at the time of the sale.

In the case of *Getty v. Jett Ross Mines,* 23 Wn. (2d) 45, 159 P. (2d) 379, the plaintiff sued for damages for breach of warranty in the sale of a dragline shovel. From a judgment in favor of the plaintiff, the defendant appealed. It appeared that, in 1935, the defendant had purchased for over twelve thousand dollars a new dragline shovel, used for excavating, for moving dirt and gravel, or as a crane. In 1941, the machine, which was in need of repair, was placed in storage, where it remained for a year. The plaintiff then purchased it for eight thousand dollars. The plaintiff introduced evidence to the effect that an officer of defendant had stated that, when certain repairs were completed, the machine would be in good condition, and that, later, relying upon the representation of defendant's officer that the machine was in " 'good operable condition,' " the purchase was made. As far as the record showed, prior to the purchase the machine was subject to any examination that the purchaser desired to make, but no request was made for permission to test it.

This court held that some of the statements made by the defendant's agent, upon which plaintiff relied as warranties, were mere "seller's praise," and were not statements upon which the buyer could rely without investigation, and, further, that no actionable representations were made. The judgment was reversed and the cause remanded, with instructions to enter judgment in favor of the defendant for the balance due upon the purchase price of the machine.

In the case at bar, the restaurant equipment was second-hand and was subject to any investigation that appellant desired to make. Apparently, appellant made no examination of the accounts of the restaurant for the purpose of ascertaining its receipts and disbursements.

We have considered appellant's first three assignments of error and find them without merit. Appellant's fourth assignment of error is also without merit.

The trial court, in its oral ruling upon the motion of respondents Sander and Olson to dismiss appellant's cross-complaint, called attention to the fact that appellant and Kaupp made no attempt to contact Sander; that plenty of

time was available for an investigation of the restaurant, its equipment, and earnings, and that these matters might have been definitely ascertained by appellant in "the exercise of ordinary business prudence and inquiry."

The trial court was also of the opinion that appellant had waived any action for fraud, had one ever existed in his favor, by his conduct after he took possession of the restaurant, by the indulgence which he received from respondent bank and Sander in connection with making payments upon the conditional sales contract, and by contracting, as owner of the restaurant, to sell the same to Wilkins.

The trial court did not err in entering judgment in favor of respondent bank and in dismissing the cross-complaint of appellants Brown against respondents Sander and also as against respondents Olson.

The judgment appealed from is, accordingly, affirmed.

SIMPSON, C. J., GRADY, HAMLEY, and DONWORTH, JJ., concur.

